UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ANDREA PANKRATZ, as Personal Representative
Of the Estate of Eric Gabriel Padilla, deceased,
And P.P., a minor child, by and through her mother and Next
Of Friend Andrea Pankratz,
                         Plaintiffs,
vs.

THE BOARD OF COUNTY COMMISSIONERS
FOR ROOSEVELT COUNTY, a political sub-
Division of the State of New Mexico, JUSTIN
PORTER, LIEUTENANT MATHEW VIGIL,
DETENTION OFFICER JESUS LAVELLE,
In their individual capacities, and
WELLPATH LLC, formerly known as
CORRECT CARE SOLUTIONS, LLC, HAILEY
SKELTON, individually, ROY J. ABRIL,
Individually, J. BASSELL, individually,
                         Defendants

                                        Civ. No. 21-655 CG/CJF

**<u>FIRST AMENDED CIVIL COMPLAINT FOR DAMAGES</u>**

        COMES NOW, Plaintiffs Andrea Pankratz, as Personal Representative of the

Estate of Eric Gabriel Padilla, deceased, and P.P., a minor child by and through her

mother and Next of Friend Andrea Pankratz, by and through their undersigned

attorney Eric D. Dixon, Attorney and Counselor at Law, P.A., Portales, New

Mexico, and for their First Amended Civil Complaint for Damages, states:

1

**1.    Facts common to all counts:**

1.    Eric Gabriel Padilla was thirty-seven years old, the father of one small child, died on November 11th, 2020 as a result of Defendants' failure to provide him with the medical care to which he was entitled.

2.    Mr. Padilla was arrested on March 18th, 2020 on an alleged bench warrant from Union County, New Mexico. There was a cash bond of five thousand dollars which Mr. Padilla was unable to post.

3.    Mr. Padilla had been detained at the Roosevelt County Detention Center since March 18th, 2020 for a total of two hundred and thirty-eight days at the time of his death shortly after mid-night November 11th, 2020.

4.    Eric Padilla was a young man who loved and was loved by his family. He adored his daughter. He was a song writer and wrote a song about his daughter and placed it on YOUTUBE. His daughter still has a copy of the song and plays it frequently when she misses her father.

5.    On March 18th, 2020, a Licensed Practical Nurse by the name of Hailey Skelton employed by Wellpath LLC conducted a "Receiving and Screening" for Mr. Padilla. She noted that he was a diabetic and received Glipizide and also hypertensive and took Lisinopril. He had been previously diagnosed with depression and was taking Celexa for depression. In addition, he indicated that

2

family and/or friends had attempted suicide or died from suicide. Mr. Padilla

noted a sense of hopelessness and was thinking about how to kill himself. It was

noted that a referral to mental health was urgently needed. However, neither

Skelton, Abril, or Bassell in deliberate indifferent to the mental and physical

health and well-being referred Mr. Padilla to a psychiatrist or other qualified

individual to treat these life threatening illnesses.

6.      On March 19th, 2020 Roy J. Abril, LMFT an employee of Wellpath LLC filled

in a "Suicide Watch Daily Assessment" at 4:50 p.m. It was noted that there were

current suicidal ideations, high risk of self-harm, and had engaged in self-harm

since the last evaluation. He was supposed to be watched every 15 minutes.

7.      On March 20th, 2020 Mr. Padilla was released to general population despite

serious mental health issues including suicidal thoughts.

8.      On April 18th, 2020 Mr. Padilla was attacked by another inmate causing a

two-inch laceration under his right eye requiring emergency treatment.

9.      On July 10th, 2020 Mr. Padilla complained that the current antidepressant

(Celexa) was not working any more. On July 22nd, 2020 Prozac (20 mg), was

started for a six-week period by J. Bassell a Nurse Practitioner employed by

Wellpath LLC. On September 2nd, 2020, Mr. Padilla was given a ninety-day

prescription for Prozac (20mg) by a nurse practitioner.

10.     On at least fifty-five different occasion Mr. Padilla was not provided his much needed life-sustaining medication was not administered (including insulin, high-blood pressure medication and anti-depressants), without any further inquiry by any of the Defendants despite their obligation to make such inquiries.

11.     Mr. Padilla was put at severe risk of being put on and then taken off strong psychotropic medications and being deprived of life-sustaining insulin on multiple occasions. Lack of regular access to insulin and/or the required diabetic diet caused Mr. Padilla to suffer extreme mood swings, depression, confusion and mental fog. Depriving Mr. Padilla of regular access to medication was de facto torture by the Defendants.

12.     License Nurse Practitioner saw Mr. Padilla on a number of occasions between March 18th, 2020 and November 8th, 2020 for his chronic health problems.  On October 11th, 2020 J. Bassell noted that Mr. Padilla should be sent for evaluation, but apparently no follow up was done.  J. Bassell, tempting to treat Mr. Padilla for diabetes and other life threatening problems for which she had no proper training or experience and acting under color of law was deliberately indifferent to the medical and health needs of Mr. Padilla.

13.     The last time Mr. Padilla was seen by WellPath LLC was on November 8th, 2020 at 7:45 a.m. in the morning by a J. Bassell a Nurse Practitioner.

14.    Mr. Padilla did not receive any medications on November 10th, 2020 despite the fact that such medications were needed to sustain his life. No Defendant made any reasonable inquiry and was deliberately indifferent to Mr. Padilla's medical condition and his suffering.

15.    On November 10th, 2020 the Roosevelt County Detention Center was severely understaffed and undertrained. On officer (Ofc. Valea was on overtime for the day. Officer Valea was in the "Master Control. Officer Lavelle relieved Master control so Office Vela could go home. Officer Ross took over the front and back male units and Officer Lezeya took over the female units. Officer Ross told Officer Lavalle he was not feeling well. It was agreed that Officer Lavalle would take over the over-sight of the male pods or the "floor."

16.    On November 10th, 2020 at around 10:17 p.m. Roosevelt County Detention Center staff (including Officer Lavalle), along with "Nurse Bea" from WellPath LLC over-heard Mr. Padilla having "a loud argument with [his] mother via telephone [shortly before his suicide]. No intervention was properly conducted by anyone despite Mr. Padilla's history of emotional lability, and suicidal ideation and the repeated indifference to Mr. Padilla's need for medication to sustain his life.

17.    Mr. Padilla was left alone in a cell with a metal  bunk bed which was used by Mr. Padilla to suspension- hang himself by his neck tied to the double bunk bed.

18.    On November 10th, 2020 Roosevelt County Detention Center Officer Jesus Lavalle did a superficial walk-through of Day-Room 5 where Mr. Padilla was locked up in Cell Numbered 29, at 23:53 hours. He did not actually observe Mr. Padilla in his cell. Officer Lavalle notice that Mr. Padilla had "thrown his socks out of his cell." Instead of investigating further Lavalle left the Day-room. The un-observed video cameras in the facility documented Mr. Padilla pulling the socks back into his cell by use "of an orange RCDC clothing item."

19.    Officer Lavalle came back a half-hour later at 00.24 hours on November 11th, 2020 "where he observed Eric Padilla [h]anging from the bunk in his cell by the use of socks." He had no idea how long Mr. Padilla had been hanging from his bunk.

20.    Mr. Padilla should not have been left alone in a cell for that long a period without any direct observations and without being properly medicated.

21.    Mr. Padilla died on November 11th, 2020, as a result of a suicide according to the University of New Mexico Medical Investigator's office.

22.     Defendants could have prevented his death if he had received appropriate

medical treatment. Officer Lavalle and then Lozoya attempted to do CPR. Then

"Nurse Bea" of WellPath LLC attempted to do CPR without any success of reviving

Mr. Padilla.

23.     Mr. Padilla's death was directly caused by the failure of the Defendant

Board of County Commissioners for Roosevelt County (hereinafter "Roosevelt

County"), its employees and WellPath LLC and its employees to provide

constitutionally adequate medical treatment to him and by their violation of

federal statutory laws designed to provide medical treatment to persons with

known disabilities. Moreover, during his detention, Mr. Padilla was denied proper

medical attention including proper attention to his severe diabetes mellitus. Mr.

Padilla complained repeatedly about going blind. He asked repeatedly to go to a

physician, but was refused. He was not give a diabetic diet despite repeated

request. He had such intestinal pain that he would break down and cry in agony.

24.     The Roosevelt County Detention Center did not and does not have the

ability or resources to care for a complex medical condition such as diabetes

mellitus. Mr. Padilla's legs swelled because of edema. His asthma was made

worse by his incarceration in the dank, poorly ventilated facility. He had

depression which was not addressed by the facility. These failures amounted to

deliberate indifference to the rights of Mr. Padilla, cruel and unusual punishment, and denial of procedural and substantive due process and equal protection in violation of the State and Federal Constitutions and violated rights secured to him under New Mexico law.

25.     Mr. Padilla was targeted by other detainees for physical retaliation by other detainees which was well known to the Defendants. He was punched in the back of the head while detained by another inmate who was known to be dangerous. The Detention Center failed to keep its building reasonably safe for its occupants including Mr. Padilla.

26.     At one point during his detention, Mr. Padilla requested that he be given his tennis shoes because of the swelling of his feet. This request was sadistically denied by employees of the Detention Center. He requested a blanket to prop up his foot because of his edema. A nurse threatened to take the blanket away if Mr. Padilla used the blanket for warmth rather than propping his leg up.

27.     Mr. Padilla was found in his cell on November 11th, 2020 "unresponsive."

28.     The Defendants Detention Center was unreasonably unsafe for its detainees including Mr. Padilla throughout this period leading to his death on November 11th, 2020.

8

29.     Mr. Padilla's death was a direct and proximate result of policies, practices

and customs maintained by Defendant Roosevelt County that caused, permitted

and/or condoned the failure to provide legally sufficient medical treatment to

detainees, especially to detainees like Mr. Padilla who were known to be suffering

from depression.

30.     The Defendants and its employees failed to properly render first aid or

medical care to Mr. Padilla on November 11th, 2020, and improperly failed to

monitor him because of chronic understaffing, ill-training, and lack of supervision

of detention officers which amounted to deliberate indifference to the

constitutional and statutory rights of Mr. Padilla.

31.     On November 11th, 2020, the Defendant Roosevelt County Board of County

Commissioners, released a "press release" claiming that Mr. Padilla "was found

unresponsive in the Roosevelt County Detention Center" on November 11th, 2020

among other claims in violation of Mr. Padilla's right of privacy.

**II. Parties and Jurisdiction**

32.     Plaintiff Andrea Pankratz is a resident of Kansas. She is the mother of P.P.,

a minor child. She is the Plaintiff in the present law-suit in two capacities, to wit:

as the Personal Representative of the Estate of Eric Padilla, deceased, and as the

mother and next of friend of Plaintiff P.P., a minor child residing in Kansas.

9

Plaintiff P.P. is the sole beneficiary of the Estate of Eric Padilla[1] pursuant to

Section 41-2-1 NMSA 1978, as Personal Representative, she brings state law

claims against Defendant County of Santa Fe under the New Mexico Tort Claims

Act and brings federal law claims under all the defendants pursuant to 42 U.S. C.

§1983, the Americans With Disabilities Act ("ADA"), and Section 504 of the

Rehabilitation Act of 1973 ("Section 504").

33.     Plaintiff P.P., brings a loss of consortium claim against Defendant Roosevelt

County under the New Mexico Tort Claims Act.

34.     Defendant Board of County Commissioners of Roosevelt County is the

governmental entity responsible for operation and maintenance of the Roosevelt

County Detention Center. This responsibility included the hiring, retention,

training, supervision and discipline of Roosevelt County Detention Administrator,

and other detention center employees and officials, including the other

Defendants. The Roosevelt County Board of County Commissioners is the entity

liable in law-suits for damages caused by employees of Roosevelt County.

35.     Defendant Justin Porter, was the Detention Center Administrator for

Roosevelt County. Defendant Justin Porter's, duties required, among other things,

---

[1] Adelina Sisk the alleged surviving spouse of Eric Padilla has made a "Petition for Allowance" in Roosevelt County, New Mexico Cause No. D-911-PB-2021-00001 which has been denied by the Personal Representative.

overseeing all the operations of the Roosevelt County Detention Center and exercising general supervisory authority over all detention center employees. Defendant Justin Porter's management and enforcement duties include staffing, training, and providing facilities that should have provided Mr. Padilla with constitutionally adequate health care and protection to address the illness and disability he suffered from.

36.     Defendant Porter had a legal obligation to identify all members of the detention population with medical and/or mental health conditions which may be worsened as a result of being incarcerated. Defendant Porter had an obligation to make every effort to have such detainees released, transferred or otherwise removed from the correctional setting. Defendant Porter breached his legal duty in regarding to Mr. Padilla.

37.     Defendant Mathew Vigil, and Jesus Lavalle, are law enforcement officers within the meaning of the New Mexico Tort Claims Act. Upon information and belief, these Defendants reside in Roosevelt County, New Mexico. Defendant Vigil and Lavelle, are sued in their individual capacity. At all times material hereto, Defendant Vigil and Lavelle acted within the scope of his employment and under color of law.

38.     Defendant Wellpath L.L.C., is a foreign (Delaware) limited liability Company

doing business within the State of New Mexico. At all times material it was the

provider of medical and mental health services at the Roosevelt County Detention

Center. Wellpath L.L.C. has a contract with Roosevelt County for the provision of

on- site mental health services for detainees which include evaluations, referrals,

crisis management, suicide intervention, individual therapy, group therapy, basic

community linkage and continuity of care along with management of diabetic

detainees and those detainees with high-blood pressure. Defendant Wellpath

L.L.C. (hereinafter Wellpath), currently receives $613,152.36 per year for its

services. Defendant Wellpath, may be served with process by its registered agent

for service of process, to wit: Corporate Creations Network Inc., 400 Pennsylvania

Avenue, Roswell, New Mexico, 88201.

39.     Defendant Hailey Skelton was at all times material hereto a Licensed Nurse

Practitioner within the State of New Mexico and an employee of Wellpath was

acting under color of law and was deliberately indifferent to the medical needs of

Mr. Padilla.

40.     Roy J. Abril, was at all times material hereto a Licensed Marriage and Family

Therapist (LMFT), within the State of New Mexico and an employee of Wellpath

and was acting under color of law and was deliberately indifferent to the health of

Mr. Padilla.

41.    J. Bassell, was at all times material hereto a Licensed Nurse Practitioner

within the State of New Mexico and an employee of Wellpath, was acting under

color of law and was deliberately indifferent to the medical needs and health of

Mr. Padilla.

42.    Plaintiffs bring this action for money damages as allowed by the New

Mexico Tort Claims Act, 1978 NMSA §§41-4-6, 41-4-9, 41-4-10, and 41-4-12.

Notice of these claims was provided to Defendant Roosevelt County on January

6th, 2021, less than ninety (90) days after Mr. Padilla's death. Plaintiffs also asserts

claims pursuant to 42 U.S.C. §1983, Section 504, and Title II of the ADA and for

medical negligence against Wellpath LLC.

43.    All Defendants were acting under color of state law and the individual

Defendants were acting within the scope of their employment at all material

times.

**III. Historical Facts Regarding the Operation and Maintenance of the Roosevelt County Detention Center.**

44.    Defendant Roosevelt County operates the Roosevelt County detention

center. Defendant is the recipient of federal financial assistance. Pursuant to 1978

NMSA §33-3-28, the principal duty of Defendant Porter, and Vigil and the employees they supervised at the Roosevelt County Detention Center is to hold and protect in custody persons accused of or convicted of a criminal offense. Inmates at the Detention Center are totally dependent on Roosevelt County for obtaining medical care and treatment. Defendants were responsible under state and federal law to provide appropriate, adequate medical treatment to detainees.

45.     The individual Defendants were public employees within the meaning of 1978 NMSA § 41-4-3 (F). Additionally, except for Wellpath LLC, the principal duty of these public employees was to hold in custody and protect persons accused or convicted of a criminal offense. As such, they are law enforcement officers within the meaning of 1978 NMSA § 41-4-3 (D) of the New Mexico Tort Claims Act.

46.     All the Defendants had a duty to exercise reasonable care to protect the lives and safety of persons incarcerated in the Roosevelt County Detention Center and placed in the custody of Defendant Roosevelt County. This duty included the provision of medical care that, at a minimum, met national standards for medical treatment in a correctional institution between March 18th, 2020 and November 11th, 2020.

14

47.    Defendant Roosevelt County has long suffered from endemic incompetence at the Detention Center manifested among other things, in a long history of deliberate indifference to the medical care to inmates.

48.    The "Agreement for Inmate Healthcare Services at Roosevelt County, New Mexico" specifically provided Defendant Roosevelt County Detention Administrator Porter and/or the Roosevelt County Board of County Commissioners with access for inspection of detailed records indicating the date, time and nature of services provided under the agreement.

49.    The "Agreement" provided for Defendant WellPath to "identify to the Detention Administrator those members of the jail population with medical or mental health conditions which may be worsened as a result of being incarcerated at the jail or which may require extensive care while incarcerated. After review of the circumstances, and when security risks permit, the Detention Administrator shall make every effort to have such inmate/detainee released, transferred or otherwise removed from the correctional setting.

50.    The 2018 edition of the National Commission on Correctional Health Care (NCCHC) Standards for Health Services in Jails in effect at the time Defendant RCBCC entered into the agreement with WellPath contained an essential standard entitled "Patients with Chronic Disease and other Special Needs."

15

51.     The NCCHC Standards required "[t]he responsible physician… develop a program to decrease the frequency and severity of symptoms, prevent disease progression and complications, and foster improved function."

52.     The NCCHC Standards required "regular clinic visits for evaluation and management by qualified health care professionals.

53.     The NCCHC Standards required "[t]reatment plans for patient with mental health conditions."

54.     The NCCHC Standards required the responsible physician to establish and annually approve "clinical protocols.

55.     During the time of Mr. Padilla's incarceration at RCDC, supervisory personnel at RCDC including Defendants Porter, Vigil received notice and were aware that the quality management process, lack of treatment for those inmates with chronic illnesses such as diabetes and depression, lack of access to the level of care required under the NCCH standards, and timely access to appropriate on and off-site medical care, were deficient during that period, thereby creating a risk of serious harm to RCDC inmates, including Mr. Padilla. Upon information and belief, these Defendants received notice and became aware of these problems through the monthly reports, matrices, logs, and meetings required under the agreement with WellPath.

16

IV.     The Federal Claims of Mr. Padilla

**COUNT I. VIOLATION OF SUBSTANTIVE DUE PROCESS-INHUMANE CONDITIONS OF CONFINEMENT/INADEQUATE MEDICAL CARE (All Defendants)**

56.     Plaintiff restates each of the preceding allegations as if fully stated herein.

57.     Mr. Padilla had a substantive due process right under the Fourteenth Amendment to humane conditions of confinement and adequate medical care.

58.     Rather than treat Mr. Padilla's mental and physical health conditions, Defendants ignored the serious and life-threatening depression and other medical conditions.

59.     All Defendants knew of his inhumane treatment.

60.     Defendants knew Mr. Padilla faced a substantial risk of serious mental or physical harm if his conditions of confinement did not meet contemporary standards of decency.

61.     Defendants had a duty to intervene and prevent this inhumane treatment rather than actively participate in it.

62.     Defendants were aware of the inhumane conditions in which Mr. Padilla was being housed.

63.     Defendants knew that Mr. Padilla was in desperate need of mental health care but failed to intervene to ensure it was provided.

17

64.     Defendants not only watched Mr. Padilla be treated inhumanely, but approved his continued inhumane treatment and housing conditions.

65.     All Defendants acted with deliberate indifference to this risk.

66.     Mr. Padilla's conditions of confinement, as described above, amounted to punishment of a pre-trial detainee in violation of the Fourteenth Amendment to the United States Constitution.

67.     As a proximate and foreseeable result of Defendants deliberate indifference, Mr. Padilla suffered injuries including pain and suffering, emotional distress, and exacerbation of his mental illness resulting in his death on November 11th, 2020.

**COUNT II. VIOLATION OF THE FOURTEENTH AND EIGHTH AMENDMENT: INADEQUATE MEDICAL AND PSYCHOLOGICAL CARE, DELIBERATE INDIFFERENCE, AND CRUEL AND UNUSUAL PUNISHMENT-WellPath LLC, Hailey Skelton, Roy J. Abril, and J. Bassell**

68.      Plaintiffs restates each of the preceding allegations as if fully stated herein.

69.     WellPath LLC had a contract with the Roosevelt County Board of County Commissioners to perform traditional state functions including providing medical services to detainees and at all times was acting under color of state law.

70.      The Roosevelt County Board of County Commissioners has delegated the responsibilities of running the Roosevelt County Detention Center health services

to Defendant WellPath LLC and its employees Hailey Skelton, Roy J. Abril and J.

Bassell.

71.    Defendant WellPath LLC, Hailey Skelton, Roy J. Abril and J. Bassell are

therefore the final policy maker responsible for the hiring, training, and

supervision of health care providers at the Roosevelt County Detention Center.

72.    WellPath, Skelton, Abril and Bassell's policies therefore became the

customs and policies of the Roosevelt County Board of County Commissioners.

73.    At all material times, Plaintiff had a Fourteenth Amendment right to

humane conditions of confinement and adequate medical care, and an Eighth

Amendment right against cruel and unusual punishment. These protections

encompass a constitutional duty to provide such persons with timely access to

necessary emergency medical care and to refrain from unnecessary, wanton

infliction of pain.

74.    Mr. Padilla' medical needs as described above, as well as his pain and

suffering were sufficiently serious and obvious to warrant protection under the

Eighth Amendment, or under the Fourteenth Amendment's Due Process Clause.

75.    There have been any number of suicide attempts at the Roosevelt County

Detention Center during the last two decades. Defendant WellPath, Skelton, Abril

and Bassell were aware of the danger of suicide by detainees including Mr.

Padilla. Defendant WellPath, Skelton Abril and Bassell's failure to implement a program created a substantial risk of illness, serious injury and death for all of these detainees.

76.     The decision by the WellPath, Skelton, Abril, and Bassett  not to treat Mr. Padilla's depression through properly supervised psychiatric care was based on a policy, practice and custom instituted by WellPath LLC in regard to the operation of the Detention Center medical facilities, and whose decisions in regard to the operation and maintenance of the facility represented the custom and policy of Defendant Roosevelt County. This policy, practice and custom was done with the knowledge and acquiescence of the Defendant Roosevelt County.

77.     Defendant WellPath, Skelton, Abril, and Bassell each owed a duty to the public, including Mr. Padilla, to properly hire, retain, train, supervise and discipline its employees, contractors, and agents in carrying out their duties in the operation and maintenance of the health care services within the Roosevelt County Detention Center. Defendant WellPath LLC breached the foregoing duties, by, among other things, improperly hiring and/or supervising its employees and agents; recklessly or through deliberate indifference refusing to adopt and implement a suicide prevention program for detainees known to suffer from depression; failing to properly train the medical providers at the Detention Center

in the diagnosis and treatment of detainees with depression. These failures by

Defendant WellPath and its supervisory employees Skelton, Abril, and Bassell,

were the cause of the injuries suffered by Plaintiffs as alleged above.

78.    Defendant WellPath, Skelton, Abril, and Bassell  have created a custom and

policy of neglecting detainees with severe depression, suicidal ideation and other

serious health care problems.

79.    Defendant WellPath, Skelton, Abril, and Bassell had a policy practice and

routine of being deliberately indifferent to the medical needs of detainees

including Mr. Padilla; including failing to understand or treat his recondite medical

condition(s) including but not limited to type two diabetes, high-blood pressure

and severe depression which could not be adequately diagnosed and treated by a

Nurse Practitioner.

80.    Defendants WellPath, Abril and Basell,  had a policy, practice and/or

routine that created an environment that encouraged the failure to provide

adequate or timely medical evaluation, any assessment, or adequate medical

monitoring and supervision or to otherwise care for Mr. Padilla while he was

placed under their care, in deliberate indifference to Mr. Padilla's serious medical

needs, health, safety and life. An affirmative link exists between the Defendants

deliberate indifferent to Mr. Padilla's serious medical needs, health, safety and

life "and the policies, practices and or customs which the Defendants

promulgated, created, implemented, and/or was reasonable for maintaining

including:

       i. Deliberate indifferent to the administration of life

          sustaining drugs to Mr. Padilla including insulin and

          Selective Serotonin Reuptake Inhibitors (SSRI's);

      ii. Failing to administer life sustaining medications on at least

          fifty-five occasions.

     iii. Failure to put Mr. Padilla on a diabetic diet which was

          essential in the treatment of his severe diabetic condition.

     iv. Allowing Mr. Padilla off of suicide watch on March 20th,

          2020, two days after he threatened to kill himself stating on

          March 20th, 2020 "no consultation needed" when in fact a

          psychiatric evaluation was needed along with a Medical

          Doctor's evaluation of his high-blood pressure and

          diabetes.

      v. Failing to follow up with Mr. Padilla by seeing him for two

          days including November 10th, 2020 when he was not

          provided any medication that was needed to sustain his life.

vi.   The failure to promulgate, implement or enforce adequate medical treatment, or supervision policies responsive to the serious medical needs of inmates like MR. Padilla;

vii.  Inadequate medical and psychiatric triage screening that failed to identify inmates with serious medical needs;

viii. Severe limitation of the use of off-site medical service providers, even in emergent situations;

ix.   Untimely medical examinations and treatments;

x.    Understaffing medical personnel; underfunding operations, or under-training employees how to identify assess or react to emergent medical situations;

xi.   The failure to supervise, oversee, or otherwise require the mental health evaluation and or suicide watch once an emergent suicide risk was determined;

xii.  The failure to do routine checks on inmates exhibiting suicidal behaviors and statements; and

xiii. The persistent ignoring of suicidal statements and acts by inmates

23

xiv.   Failure to comply with NCCHC Standards for Health Services
in Jails

81.     Defendant WellPath, Skelton, Abril, and Bassell, knew of the harmful effects
and dangers of its policies of neglect but disregarded those dangers and created a
policy and custom of neglecting those with serious mental and physical illnesses
including Plaintiff.

82.     This policy and custom was a moving force behind the violation of Plaintiff's
constitutional rights which amounts to deliberate indifference under color of law.

83.     Because Mr. Padilla was in Defendants' complete custody and control at all
times for his medical needs; and did not have the authority or the ability to
provide for his own basic needs, including safe treatment for his depression,
diabetes, and high-blood pressure; Defendants WellPath, Skelton, Abril, and
Bassell had a special relationship with Mr. Padilla and a heightened duty of care to
provide these necessities and to prevent an unreasonable risk of harm to him.

84.     Defendants discriminatory, reckless, deliberately indifferent and/or
negligent acts and omissions increased the risk that Mr. Padilla would develop
complications to his known depression, and cause his condition to deteriorate,
diminishing his chance of improved health and causing him to lose his chance to
survive.

24

85.    At all times material hereto, the acts and omissions of Defendants were unreasonable, reckless, willful, and deliberately indifferent to Mr. Padilla's rights under the Eighth and/or Fourteenth Amendment.

86.    At all times material hereto, each Defendant acted negligently, recklessly and/or with deliberate indifference to the state law rights of Mr. Padilla.

87.    Defendants were aided in agency to commit such acts against Mr. Padilla by their total control over and custody of him and by his extreme physical and emotional vulnerability while in Defendants custody, care and control.

88.    The above-described conduct of Defendants were a direct and proximate cause of the deprivation of Mr. Padilla's clearly established Eighth and Fourteenth Amendment rights and his rights under New Mexico state law and resulted in the foreseeable physical and emotional pain and suffering, rapidly declining health and physical condition, lost chance for his condition to improve, lost chance for him to survive and, ultimately, his death.

**COUNT III: CUSTOM AND POLICY OF VIOLATING CONSTITUTIONAL RIGHTS**

**i.    The Deliberate indifference of Defendants Roosevelt County, Porter, Vigil and Lavalle were a direct cause of his death and violated his clearly established Eighth and/or Fourteenth Amendment Rights.**

89.    Plaintiffs restate each of the preceding and subsequent allegations as if fully stated herein.

90.     Defendant Roosevelt County Board of County Commissioners has delegated the responsibilities of running the Roosevelt County Detention Center to Defendant Porter.

91.     Defendant Porter delegated responsibilities of running the Roosevelt County Detention Center to Vigil and Lavalle.

92.      As set forth above, these Defendants Roosevelt County, Porter, Vigil, and Lavalle violated Mr. Padilla's Eighth and/or Fourteenth Amendment rights in the following ways, to wit:

a.      From the time Mr. Padilla was incarcerated at the Roosevelt County jail on March 18th, 2020, all Defendants (except Lieutenant Vigil and Detention Officer Lavalle), knew or should have known that he suffered from a serious medical condition: depression and suicidal ideation along with diabetes. Defendants should have been passing by Mr. Padilla's cell at least every fifteen minutes and making eye contact but this was not done. These Defendants knew that the failure to treat this condition with proper medication posed an obvious and substantial risk to the health of Mr. Padilla, including an obvious and substantial risk to his life. Defendants as a matter of policy and/or custom refused to provide any psychiatric treatment and otherwise refused or failed to provide any other appropriate medical treatment for Mr. Padilla's serious medical conditions.

26

Defendants refusal to provide him with appropriate psychiatric intervention and

treatment constituted deliberate indifference to his medical condition.

Defendants' acts and omissions led to Mr. Padilla's suicide.

b.     Mr. Padilla's conditions of confinement amounted to punishment of a pre-

trial detainee in violation of the Eighth and Fourteenth Amendments to the

United States Constitution

93.     The policies, customs, decisions and practices of Defendants have created

a climate within the Roosevelt County Detention Center whereby the mentally ill

are deprived of adequate medical care and humane conditions of incarceration.

94.     There is a causal connection between Defendants policies and the violation

of Mr. Padilla's constitutional rights, which amounts to deliberate indifference.

**ii.     Defendant Roosevelt County violated statutory rights guaranteed to Mr.
Padilla under Title II of the Americans With Disabilities Act and Section 504 of
the Rehabilitation Act of 1973**

95.     As alleged above, Mr. Padilla suffered from a chronic disability depression.

As with many other chronic disabilities and diseases, depression involves cycles of

relapse and remission. Without treatment or other recovery, depression may

result in premature death.

96.     Mr. Padilla was a qualified individual with a disability within the meaning of

Title II of the ADA and Section 504.

97.     Defendant Roosevelt County was a public entity within the meaning of the ADA as were its agencies and departments. Additionally, Defendant Roosevelt County was the recipient of federal financial assistance within the meaning of Section 504.

98.     As a qualified individual with a disability under these two federal statutes, Mr. Padilla had a right not to be denied the benefits of services, programs, or activities or to be otherwise discriminated against on account of his disability in receiving such services and programs. Under these two federal statutes, the medical care provided by Defendants to detainees at the Roosevelt County Detention Center is a "service" that detainees must receive without discrimination on account of disability.

99.     Defendants failed to provide Mr. Padilla necessary treatment because of his disability. Defendants routinely provide treatment to detainees for other chronic disabilities and diseases. Mr. Padilla and other detainees who suffer from depression are the only inmates with a chronic serious disabling illness to whom Defendants refused to provide proper treatment. Defendant Roosevelt County discriminated against Mr. Padilla by completely denying him necessary medical service and treatment because of his disability and this conduct was a direct cause of his death.

100.   Additionally, when Defendants refused to provide Mr. Padilla with proper

psychiatric care and medications, they intentionally denied him the reasonable

accommodation for his disability to which he was entitled under the ADA and

Section 504 without this accommodation, Defendants deprived him of treatment

necessary to effectively manage his disability. By denying Mr. Padilla this

reasonable accommodation to his disability, Defendants unlawfully denied him

meaningful access to the Roosevelt County's health care services and other

programs available to other detainees.

**V. The State law claims**

**A.      The State Law Claims of the Estate of Eric Padilla against the Roosevelt County Board of County Commissioners**

101.   Plaintiff restates each of the preceding allegations as if fully stated herein.

102.   Defendant Roosevelt County's immunity is waived under the New Mexico

Tort Claims Act pursuant to NMSA 1978 §§ 41-4-6; 41-4-9; 41-4-10, and 41-4-12.

103.   Defendant Roosevelt County is directly responsible to Plaintiffs for the

negligent and/or intentional acts and omissions of their respective employees,

contractors, and agents under the doctrine of vicarious liability and/or

respondent superior.

104.   Defendant Roosevelt County and its employees, contractors, and agents maintained and operated the Roosevelt County Detention Center and pursuant to NMSA 1978 § 41-4-6 had a duty to exercise reasonable care in the provision of medical care to inmates and in carrying out their duties as law enforcement officers/corrections officers.

105.   For purposes of Plaintiffs' claims under NMSA 1978 §41-4-9, Defendant Roosevelt County operated a "hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities" within the Roosevelt County Detention Center. In fact, detainees had no access to any health care or treatment other than what Defendant provided at its medical unit.

106.   For purposes of Plaintiffs'' claims under NMSA 1978 §41-4-10, Defendant Roosevelt County's employees, contractors, and/or agents, including Wellpath LLC are qualified and licensed health care providers. In fact, detainees had no access to any health care providers other than those Defendant provided in its medical unit or to whom a detainee was referred by Defendants' employees.

107.   As set forth above in this Complaint between March 18th and November 11th, 2020, Defendant Roosevelt County failed to provide adequate medical treatment to detainees at the Roosevelt County Detention Center and failed to protect the general population of inmates by failing to provide appropriate

30

psychiatric treatment program to inmates at the Detention Center, and by

otherwise failing to provide reasonable medical care and treatment to detainees.

108.   Defendant Roosevelt County, and its employees, contractors, and agents,

were charged with a duty to Mr. Padilla and other detainees to exercise

reasonable care in the maintenance and operation of the Roosevelt County

Detention Center premises to ensure safe and sanitary conditions existed. They

also had a duty to provide detainees with adequate medical care for their serious

medical needs.

109.   Defendant Roosevelt County breached the duty of care it owed to Mr.

Padilla because it failed to exercise reasonable care in the manner in which it

operated and maintained health and safety inside the Roosevelt County

Detention Center. It failed to implement and/or follow adequate procedures and

failed to otherwise take reasonable precautions to treat inmates who it knew

suffered from depression. Defendant failed to take reasonable steps to

implement a suicide prevention program. These failures by the employees of the

Defendant was a cause of the violation of Plaintiffs' state common law rights and

his state constitutional right to receive constitutionally adequate medical care for

his serious medical needs.

110.   Defendant Roosevelt County further breached the duty of care it owned Mr. Padilla by its negligent failure to provide adequate medical treatment for his serious medical needs. This includes failure to properly diagnose and treat Mr. Padilla's depression; high-blood pressure and diabetes.

111.   The negligent failures of Defendant Roosevelt County described in the preceding paragraphs were a direct cause of the injuries suffered by and the death of Mr. Padilla.

112.   Defendant Roosevelt County's negligence was of a kind which made the Roosevelt County Detention Center premises dangerous to members of the public and detainees such as Mr. Padilla.

113.   Defendant Roosevelt County owed a duty to the public including Mr. Padilla and Plaintiff P.P. to properly hire, retain, train, supervise and discipline its employees, contractors, and agents in carrying out their duties in the operation and maintenance of the Roosevelt County Detention Center. Defendant breached the foregoing duties by among other things failing to adopt an adequate suicide prevention program; negligently failing to properly train the detention center staff in the treatment of detainees suffering from depression; failure to adequately staff the Detention Center; failure to properly monitor detainees with known depression and suicidal ideation. These failures by Defendant and its

32

supervisory employees were a cause of the violation of the rights and of the

injuries suffered by Plaintiffs as alleged above.

**B.     The State Law Claims for Loss of Consortium Pursuant to the New Mexico Tort Claims Act of Plaintiff P.P. against Defendant Roosevelt County Board of County Commissioners**

114.    Plaintiff P.P., as the biological minor child of Eric Padilla, had a close, loving,

mutually dependent familial relationship with Eric Padilla prior to his death in

November, 2020. She loved her father deeply and was dependent on him to

provide emotional and parental support.

115.    As a direct and proximate result of the intentional, reckless, grossly

negligent and/or negligent acts and omissions of Defendant Roosevelt County,

including its supervisors, employees, contractors, agents, and servants, Plaintiff

P.P. suffered the loss of consortium with her father, Eric Padilla, including his

society, guidance, companionship, support, and other aspects of the loss of the

relationship resulting from Eric Padilla's death.

116.    Defendant Roosevelt County's immunity has been waived with respect to

this claim, and as a minor child dependent on Eric Padilla, Plaintiff P.P., has a right

to pursue this action for loss of consortium.

117.   Plaintiff P.P.'s loss of consortium was caused by the negligent and tortious

actions of Defendant Roosevelt County, including its employees, contractors,

servants, and agents.

118.   As a direct and proximate result of Roosevelt County's negligence and other

tortious conduct, including that of their employees, contractors, and agents,

Plaintiff P.P. suffered the damages set forth below.

**C.   Claim for medical negligence, breach of fiduciary duties against Wellpath LLC**

119.   Plaintiffs incorporate paragraphs 20, 28 and 30 as if set forth herein.

120.   In treating, making diagnosis of and caring for Mr. Padilla, Defendant

Wellpath LLC had a duty to possess and apply the knowledge and to use the skill

and care ordinarily used by reasonably well-qualified health care providers

practicing under similar circumstances giving due consideration to the locality

involved.

121.   Defendant Wellpath LLC had a duty to tell Mr. Padilla that another

treatment provider was needed to treat him for his mental health problems, to

wit: a psychiatrist.

122.   Defendant Wellpath LLC was negligent in its diagnosis, care and treatment

of Mr. Padilla including but not limited to allowing an Licensed Practical Nurse

(LPN), to make an initial assessment regarding Mr. Padilla's mental state and

otherwise failing to provide competent providers of mental health services and

other medical services; failing to inquire into why Mr. Padilla was not taking his

medication; failure to follow up and seek treatment after Mr. Padilla's mental

health crisis on November 10th, 2020; Defendant knew or should have known that

a doctor with other qualifications was needed for Mr. Padilla to receive proper

treatment but failed to tell Mr. Padilla or seek proper treatment for Mr. Padilla.

123.   Defendant Wellpath LLC owed Mr. Padilla a fiduciary duty in treating him

which it breached.

124.   Plaintiffs have been damaged by Defendant Wellpath LLC's negligence and

breach of fiduciary duties.

**VI. Damages.**

125.   As a direct and proximate result of the wrongful and negligent actions and

omissions of the Defendants described above, the Estate of Eric Padilla

represented here by Plaintiff Andrea Pankratz was injured and is entitled to

recover for the following damages in an amount to be determined by the trier of

fact, to wit:

A.      The intense physical and emotional pain and suffering endured by Eric

Padilla from the time he entered the Roosevelt County Detention Center on

March 18th, 2020 until he died on November 11th, 2020.

B.       The present worth of the life of Eric Padilla to his Estate, having regard to

the aggravating circumstances attending the wrongful and unlawful acts which

resulted in his death, as provided for by the New Mexico common law. Such

damages include hedonic damages for the value of the loss of life itself, and the

value of the loss of Mr. Padilla's enjoyment of life.

C.      The reasonable and necessary expenses for Mr. Padilla's funeral and burial

incurred by the Estate. Plaintiff Andrea Pankratz as representative of the Estate, is

entitled to recover special damages therefore in an amount to be determined at

the trial in this cause.

126.    As a direct and proximate result of the wrongful and negligent actions and

omissions of the Defendants described above, Plaintiff P.P. represented her by

Plaintiff Andrea Pankratz suffered the loss of consortium with her father and is

entitled to recover compensatory damages in an amount to be determined at the

trial of this cause.

127.    Because Defendants WellPath, LLC, Porter, Vigil, and Lavalle acted with

reckless disregard for and deliberate indifference to the federal constitutional

rights of Mr. Padilla, the Estate of Eric Padilla is entitled to recover punitive damages against these defendants in their individual capacities in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiffs ask that this Court grant them the following relief, to wit:

1.      Compensatory damages in an amount to be determined by the trier of fact;

2.      Punitive damages against Defendants WellPath LLC, Porter, Vigil, and Lavalle in an amount to be determined by the trier of fact;

3.      Pre-and post-judgment interest;

4.      Attorneys' fees and costs incurred herein; and

5.      Such other and further relief as the court deems just and proper.

Respectfully Submitted:

/s/ Eric D. Dixon

_____

Eric D. Dixon
Attorney and Counselor at Law, P.A.
301 South Avenue A,
Portales, New Mexico, 88130
(575) 359-1233
Facsimile: (575) 356-4946
e-mail: eric@ericdixonlaw.net
-and-
Christian P. Christensen
Christian P. Christensen LLC
421 S Avenue C #D,
Portales, New Mexico, 88130
(575) 226-5291

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing this 26th day of August,

2021 which caused the foregoing to be served on all counsel of record in the

above matter.

/s/ Eric D. Dixon
_____
Eric D. Dixon