IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREA PANKRATZ, as Personal Representative
of the Estate of Eric Gabriel Padilla, deceased,
and P.P., a minor child, by and through her mother and Next
of Friend Andrea Pankratz,

Plaintiffs,

vs. No. 2:21-cv-00655-MV-GJF

THE BOARD OF COUNTY COMMISSIONERS
FOR ROOSEVELT COUNTY, a political sub-
division of the State of New Mexico, JUSTIN
PORTER, LIEUTENANT MATHEW VIGIL,
DETENTION OFFICER JESUS LAVELLE,
in their individual capacities, and
WELLPATH LLC, formerly known as
CORRECT CARE SOLUTIONS, LLC, HAILEY
SKELTON, individually, ROY J. ABRIL,
Individually, J. Bassell, individually,

Defendants.

**DEFENDANTS BOARD OF COUNTY COMMISSIONERS FOR ROOSEVELT COUNTY, JUSTIN PORTER, MATTHEW VIGIL AND JESUS LAVELLE [LAVALLE]'S MOTION FOR SUMMARY JUDGMENT AND MEORANDUM IN SUPPORT**

Defendants, the Roosevelt County Board of County Commissioners, Justin Porter, Lieutenant Mathew Vigil, Detention Officer Jesus Lavelle, by and through counsel, Daniel J. Macke, pursuant to Fed.R.Civ. P. 56, hereby submits their Motion for Summary Judgment and Memorandum in Support.

Plaintiff opposes the Motion.

## INTRODUCTION

As against these Defendants, Plaintiff brings four (4) claims stemming from the in-custody suicide of Mr. Eric Padilla on November 11, 2020. For the reasons set forth herein, however, the

Defendants are entitled to summary judgment, and the individually named Defendants are entitled to qualified immunity. Plaintiff's State law claims are barred by an independent intervening cause, *i.e.* Mr. Padilla's suicide. In addition, Plaintiff's claims are barred by sovereign immunity and further because the undisputed material facts do not demonstrate that the Detention Center Defendants were negligent or caused the injury herein.

## STATEMENT OF MATERIAL FACTS

For purposes of this Motion, the Defendants set forth the following Statement of Undisputed Material Facts:

1. Eric Padilla was arrested on March 18, 2020 in Union County and was unable to post bond. Amended Complaint [Doc. 14-1, 8/12/21] ¶ 2 (First Amended Complaint)

2. Mr. Padilla had been detained at the Roosevelt County Detention Center from March 18, 2020 to November 11, 2020. First Amended Complaint ¶ 3.[1]

3. At all times, Defendant Wellpath LLC was the contracted medical and mental health services provider for the Roosevelt County Detention Center. First Amended Complaint ¶ 38.

4. On March 18, 2020, at the time of booking, a Licensed Practical Nurse by the name of Hailey Skelton, employed by Wellpath LLC, conducted a "Receiving and Screening" for Mr. Padilla. She noted that he was diabetic, received Glipizide, was hypertensive and too lisinopril, and had been previously diagnosed with depression and was taking Celexa. First Amended Complaint ¶ 5.

5. Based on information she received from Mr. Padilla and the arresting and transport officer, Ms. Skelton placed Mr. Padilla on a suicide watch. Deposition of Hailey Skelton p. 16, ln. 16 to p. 18, ln. 12 attached hereto as Exhibit A. [Doc. 69-1, 4/18/22, Exhibit A to MSJ of Hailey Skelton].

6. Nurse Skelton referred Mr. Padilla to the qualified mental health professional, Mr. Roy Abril, also employed by Wellpath, LLC. *Id.*

[1] Although not pertinent to the factual background, Roosevelt County held pre-trial detainees from Union County.

7. Mr. Abril saw and assessed Mr. Padilla on March 18, March 19, and March 20, 2020. Deposition of Roy Abril Tr. p. 104, ln. 17 to p. 105, ln. 16 attached hereto as Exhibit B.

8. Mr. Abril is a Licensed Marriage Family Therapist. Abril Tr. p. 4, ln. 16-17.

9. On March 20, 2020 Mr. Padilla expressed that he had a will to live, was not expressing signs of imminent suicide, believed his mother was going to post his bond and get him out of jail, and he wanted to go to general population to talk to friends he had there. [Doc. 69-3, pp. 2-4, R. Abril Tr. p. 47, ln. 4 to p. 49, ln. 14., Exhibit C to H. Skelton MSJ, 4/18/22].

10. Based on Mr. Abril's assessment and Mr. Padilla's expression that he wanted to live, Mr. Padilla was discharged from suicide watch to general population by Mr. Abril. *Id.*

11. Following his discharge from suicide watch, Mr. Padilla received mental healthcare from Mr. Abril and Kim Devou, the mental health nurse practitioner, also employed by Wellpath, LLC. [Doc. 69-3, pp. 5-7, R. Abril Tr. 54, ln. 13 to p. 56, ln. 13, Exhibit C to H. Skelton MSJ, 4/18/22].

12. Utilizing the internal process for doing so, Mr. Padilla requested to be seen by the mental health provider because he wanted his medications adjusted. Deposition of Dr. Annaseril E. Daniel Tr. p. 46, ln. 8-18 attached hereto as Exhibit C.

13. On July 10, 2020, Mr. Abril saw Mr. Padilla again, related to Mr. Padilla's request to have his medications evaluated, and Mr. Abril referred Mr. Padilla to a psychiatrist to make a determination about whether medications need to be changed or adjusted. *Id.;* First Amended Complaint ¶ 9.

14. On July 22, 2020, Mr. Padilla was seen by the psychiatric provider who started Mr. Padilla on Prozac for a six (6) week period. Amended Complaint ¶ 9; Dr. Daniel Tr. p. 48, ln. 2 to p. 50, ln. 3.

15. On September 2, 2020, the Prozac was renewed for another ninety (90) days, to be reassessed on December 2, 2020. Dr. Daniel Tr. p. 50, ln. 4-11.

16. Mr. Padilla saw the psychiatric nurse practitioner on September 2, 2020 and indicated that the Prozac was working better. Dr. Daniel Tr. p. 50, ln. 12-18.

17. Between September 2, 2020 and November 10, 2020, Mr. Padilla was seen by the medical provider and nurses, and was seen by nurses for med pass daily. Dr. Daniel Tr. p. 51, ln. 18.

18. Mr. Abril and other mental health providers from Wellpath LLC saw Mr. Padilla five (5) or six (6) times, the last time being on September 2, 2020. [Doc. 66, p. 6, Pl. Resp. to R. Abril MSJ para. 4 and attachments thereto, Plaintiff's Exhibit 2 (66-2, 4/11/22) and Exhibit 11 (Doc. 66-11, 4/11/22)].

19. Prior to November 10-11, 2020, Detention Officer Jesus Lavalle received training in suicide prevention on two (2) occasions. Deposition of J. Lavalle Tr. p. 12, ln. 16 to p. 13, ln. 16 attached hereto as Exhibit D.

20. Officer Lavalle worked the 5:00 p.m. to 5:00 a.am. shift on November 10-11, 2020. Lavalle Tr. p. 19, ln. 8-11.

21. The shift was also staffed by Officer Ross, Officer Vela, Officer Lozoya, and Sergeant Matthew Vigil. Officer Vela was feeling sick and had to go home. Lavalle Tr. p. 19, ln. 12 to p. 21, ln. 6; Tr. p. 35, ln. 9-20.

22. On the night of November 10, 2020, Officer Lavalle was doing "med-pass" with Wellpath Nurse Beatrix Docherty and they over-heard Mr. Padilla having a loud argument with his mother inside Dayroom 5. Lavalle Tr. p. 22, ln. 3-12.

23. Officer Lavalle does not know what was said. However, Nurse Docherty and Officer Arica Sandoval spoke with Mr. Padilla and asked if he was okay, and all Mr. Padilla said was that it was just his Mom. Mr. Padilla took his medication and left back to the day room. Lavalle Tr. p. 23, ln. 7-14; Dr. Daniel Tr. p. 54, ln. 1-15; Deposition of Tracey Reed Tr. p. 20, ln. 13-24 attached hereto as Exhibit E.

24. Mr. Padilla was upset at the time. However, it was not unusual for him to be loud and disrespectful to whoever he was talking to on the phone. Lavalle Tr. p. 57, ln. 17 to p. 58 ln. 4.

25. Detention Officers are trained when they see an inmate being emotionally upset to contact a medical provider. On November 10, 2020, Lavalle did not call a medical provider because Nurse Docherty was present. Lavalle Tr. p. 60, ln. 2-12.

26. Officer Lavalle was never informed that Mr. Padilla was depressed, feeling hopeless or sad. Lavalle Tr. p. 70, ln. 3-11.

27. Mr. Lavalle also testified that Mr. Lavalle had never heard Mr. Padilla threatening to hurt himself. [Doc. 75-7, 4/27/22 (Plaintiff's Response to Def. Skelton's MSJ, Lavalle Tr. p. 58:8-10.]

28. Matthew Vigil was working as a Lieutenant on November 10, 2020. Deposition of Matthew Vigil Tr. p. 10, ln. 17-20 attached hereto as Exhibit F.

29. Lt. Vigil heard Mr. Padilla being loud on the phone with his mother and was aware that the Officer present was also with medical personnel doing med-pass at the time. Vigil Tr. p. 10, ln. 21 to p. 11, ln. 8.

30. Mr. Vigil had received annual suicide prevention training, including in 2020 Vigil Tr. p. 16, ln. 7-17; Deposition of Justin Porter Tr. p. 36, ln. 12 to p. 37 ln 11.

31. Security rounds were conducted in the facility, including in Mr. Padilla's dayroom on November 10, 2020 5:30, 6:22, 6:52, 7:27, 8:17, 9:09, 10:10, 10:31, 11:04, 11:26, 11:53 and on November 11, 2020, at 12:24 when Mr. Padilla was discovered. Defendants' Answer to Interrogatory No. Twenty-Two attached hereto as Exhibit G.

32. Officer Lavalle performed a security round at 11:53 p.m. on November 10, 2020, at which time Mr. Padilla was in his cell alive. Lavalle Tr. p. 49, ln. 6 to p. 50, ln. 1.

33. Roosevelt County Detention Officers were given suicide prevention training, which included a component of mental health training, including recognizing the signs and symptoms of mental illness and risk factors for suicide. Officers are also trained when its necessary to refer a detainee to a mental health care professional. Reed Tr. p. 34, ln. 23 to p. 35, ln. 1-20.

34. Roosevelt County met all local and national standards for custody and security, suicide prevention policies, and training. Reed Tr. p. 36, ln. 2 to p. 37, ln. 2 and p. 22-23 of Report of Tracey Reed.

35. There is no evidence that Mr. Padilla expressed suicidal ideation after March 20, 2020. Deposition of Dr. Anasseril E. Daniel Tr. p. 44, ln. 24 to p. 45, ln. 6.

36. There is no evidence that Roosevelt County Detention officers had any information that Mr. Padilla was either contemplating suicide or at risk for suicide. *Id.* Reed Report p. 23; Dr. Daniel Tr. p. 92, ln. 92, ln. 19 to p. 93, ln. 24; Deposition of Hailey Skelton Tr. p. 20, ln. 21-25.

37. Plaintiff's expert, Dr. Annaseril E. Daniel is prepared to offer opinions, all of which are offered to within a reasonable degree of *medical* probability. Plaintiff does not have an expert in corrections or detention practices. Dr. Daniel Tr. p. 10, ln. 16 to p. 11, ln. 23.

38. The Roosevelt County Detention Center does not receive federal funds. Affidavit of Amber Hamilton attached hereto as <u>Exhibit H.</u>

## ARGUMENT

The general standard on a motion for summary judgment shifts significantly where, as here, the Defendants invoke the protection of qualified immunity. *See e.g. Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000). In such instances, the plaintiff bears the "heavy two-part burden" of establishing that "the defendant's actions violated a [federal] constitutional or statutory right" and that the right in question "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotation marks omitted). To be sure, it is now settled

law that the Court may elect "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). If the plaintiff meets its burden under this framework, the Court then proceeds with its ordinary summary judgment analysis and the burden reverts to the defendant to demonstrate that no genuine issue of material fact exists that would defeat its claim for qualified immunity. *See, e.g. Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993).

## I. Count I-Violation of Substantive Due Process-Conditions of Confinement/Inadequate Medical Care.

Mr. Padilla is deceased. It is unclear whether Plaintiff is here claiming that the alleged inhumane conditions of confinement (whatever these are alleged to be) or the alleged inadequate medical care contributed to his suicide or whether this is a stand-alone claim for deliberate indifference to his medical needs. The stand-alone claim(s), to the extent intended, must be dismissed because they do not extend beyond the death of Mr. Padilla. *Oliveros v. Mitchell,* 449 F.3d 1091 1095-96 (10th Cir. 2006)(Section 1983 claims do not survive would-be entitled plaintiff's unrelated death).

The Defendants are likewise entitled to summary judgment to extent Plaintiff claims that alleged inhumane conditions or inadequate medical or mental/health care amounts to deliberate indifference to a substantial risk of suicide. *See generally Estate of Burgaz v. Bd. of Cnty. Comm'rs for Jefferson Cnty. Colo.,* 2022 U.S. App. Lexis 10056, No. 21-1049 (10th Cir., April 14, 2022).

Jail officials "cannot 'absolutely guarantee the safety of their prisoners.'" *Cox v. Glanz,* 800 F.3d 1231, 1248 (10th Cir. 2015) (quoting *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999)). However, jail officials and municipalities have a constitutional duty to take reasonable steps to protect prisoners' safety and bodily integrity. *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1499 (10th Cir. 1990). Claims based on a jail suicide are considered and treated as claims based on the failure of the jail officials to provide necessary medical care for those in their custody. *Cox*, 800 F.3d at 1248. Thus, the claims are

assessed for deliberate indifference to serious medical needs. *Estate of Hocker ex rel. Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994).

The test for deliberate indifference has a dual objective and subjective component. For the objective component, the complainant must demonstrate that the deprivation is sufficiently serious to warrant intervention or treatment. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The subjective inquiry asks whether the defendants "knew [the detainee] faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it." *Redmond v. Crowther*, 882 F.3d 927, 939-40 (10th Cir. 2018)(quoting *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (internal quotation marks omitted)).

The objective component of the deliberate indifference test "requires showing the alleged injury is 'sufficiently serious.'" *Redmond*, 882 F.3d at 939 (citing *Self v. Crum*, 439 F.3d 1227, 1230-31 (10th Cir. 2006)). Death by suicide satisfies the objective requirement. *See Martinez*, 563 F.3d at 1088-89.

The subjective prong requires an official to know of and disregard an excessive risk to a detainee's health or safety. *Redmond*, 882 F.3d at 939-40. "[T]he official must both be *aware* of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also *draw the inference*." *Id.* at 936 n.3 (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)) (emphases added).

An official's failure to alleviate a significant risk of which he/she was unaware, no matter how obvious the risk or how gross his/her negligence in failing to perceive it, is not a constitutional violation. *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Indeed, even if a jail official has knowledge of a substantial risk of serious harm to detainees, "he[she] is not deliberately indifferent to that risk unless he[/she] is aware of and fails to take reasonable steps to alleviate that risk." *Id.*

Here, there is no evidence as to any Defendant Detention Officer herein that there was knowledge of a substantial risk of suicide. Roosevelt County contracted for medical care, including mental health care at the Detention Center. Clinical decisions were made by these providers, including an initial placement on suicide watch at or after the time of booking. A second clinical decision was made to remove Mr. Padilla from suicide watch and Mr. Padilla, thereafter, coexisted in the facility until his death on November 11, 2020. However, there is no evidence that Defendant Porter, Defendant Vigil or Defendant Vigil had any knowledge of a substantial risk of suicide or that they had such knowledge and were deliberately indifferent to it. Indeed, as to Defendants Porter and Vigil, there is no evidence that they even had any personal contact with Mr. Padilla such that any knowledge could have been gained in the first instance. *Cox,* 800 F.3d at 1251-52 ("…the record…does not establish that *any* identified Jail employee…had knowledge that Mr. Jernegan presented a substantial risk of suicide.").

Therefore, these Defendants are entitled to summary judgment because there is no underlying constitutional violation. Furthermore, the individual Defendants are entitled to qualified immunity, as there is no clearly established law that put these Defendants on notice that any aspect of Mr. Padilla's presentation between March 20, 2020 and November 11, 2020 would provide a detention officer with knowledge of a substantial risk of suicide. *George v. Beaver Cnty.,* 2022 U.S. App. LEXIS 11904, 2022 WL 1310982 *24-25 (10th Cir., May 3, 2022).

**II. Count III: Custom and Policy of Violating Constitutional Rights: i. The Deliberate indifference of Defendants Roosevelt County, Porter, Vigil, and Lavalle were a direct cause of his death and violated his clearly established Eight and/or Fourteenth Amendment Rights.**

Likewise, there is no evidence here that there was a constitutional violation to support a claim for supervisory or municipal liability. *Walker v. City of Orem,* 451 F.3d 1139, 1152 (10th Cir. 2006)(requiring underlying constitutional violation for municipal liability); *Hinton v. City of Lakewood,* 997 F.2d 774, 782 (10th Cir. 1993) (municipality may not be held liable when there is no underlying

constitutional violation). Moreover, there is no evidence of affirmative link between any supervisory conduct or a County policy, practice or procedure which caused any alleged constitutional violation. *Id.* at 21-22; *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694-95, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978).

Plaintiff claims that the County delegated authority to run the Detention Center to Defendant Porter, and Defendant Porter then delegated authority to Defendants Vigil and Lavalle. First Amended Complaint ¶¶ 90-91. There is no evidence to support such delegation or that these Defendants were policymakers for purposes of establishing "custom and policy." However, and again, there simply is no evidence that these Defendants were deliberately indifferent or that any custom or policy caused any such violation.

Indeed, Plaintiff doesn't even allege what custom or policy led to such a violation, other than the bald allegations that "policies, customs, decisions and practices of Defendants have created a climate within the Roosevelt County Detention Center whereby the mentally ill are deprived of adequate medical care and humane conditions of incarceration." First Amended Complaint ¶ 92(b). The records contains no evidence of such a "climate." All officers had annual training, all of which met local and national standards for training in suicide prevention and Plaintiff cites no incident, pattern of incidents, lack of training, unconstitutional policy, or any other evidence that caused a constitutional violation. *Brown v. Montoya,* 662 F.3d 1152, 1163-64 (10th Cir. 2011).

## III. Americans with Dishabilles Act/Rehabilitation Act

Plaintiff's statutory claims fail for similar reasons. Again, there is no evidence that any Defendant discriminated on the basis of disability. There is also no evidence that Mr. Padilla was disabled, as a matter of law. In fact, Mr. Padilla was afforded ample medical and mental health treatment throughout the course of his detention, and there simply is no evidence of intentional discrimination the basis of disability.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B); *United States v. Georgia*, 546 U.S. 151, 154, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006); *See also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998).

As "[t]he Rehabilitation Act is materially identical to and the model for the ADA," the elements of claims asserted under the statutes are the same, except that the Rehabilitation Act requires that the defendant receives federal funds. *Tivis v. Dowis,* No. 11-CV-02050-PAB/KMT, 2014 U.S. Dist. LEXIS 124981, 2014 WL 4413216, at * 6 (D.Colo., September 8, 2014)(quoting *Crawford v. Ind. Dep't of Corr.,* 115 F.3d 481, 483 (7th Cir. 2000).

Plaintiff's RA claims can be dismissed easily as there is no issue of material facts as to the basic element that the Detention Center received federal funds. The Detention Center did not receive federal funds at the time of Mr. Padilla's death. Therefore, the RA claims must be dismissed.

As to the disability claims generally, "[c]ourts have recognized three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). Department of Justice regulations "require public entities to 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.'" *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (quoting 28 C.F.R. § 35.130(b)(7)). "[A] public entity is on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation." *J.V.*, 813 F.3d at

1299 (quoting *Robertson*, 500 F.3d at 1197 ("When a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim.")).

In determining whether the denial of medical treatment can give rise to an ADA claim, courts have distinguished between allegations of inadequate medical treatment, which generally do not state a claim under the ADA, and allegations "that a plaintiff was discriminatorily precluded from access to medical treatment altogether." *Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001); *Hughes*, 594 F. Supp. 2d 1226, 1241 (U.S. Colo., January 15, 2009).

Here, Plaintiff cannot establish that Mr. Padilla had a disability. *Bristol v. Bd. of County Comm'rs,* 281 F.3d 1148, 1158 (10th Cir.), *rev'd in part on other grounds*, 312 F.3d 1213 (10th Cir. 2002)(requiring an impairment that substantially limits at least one major life activity). As best, here, Plaintiff alleges that Mr. Padilla suffered from depression. First Amended Complaint ¶ 99. Even if depression is considered a mental or physical impairment as a matter of law, Plaintiff fails to establish that Mr. Padilla's depression substantially limited one or more of his major life activities. *Pack v. K'Mart,* 166 F.3d 1300, 1304 (10th Cir. 1999).

Moreover, Plaintiff has no evidence to support a claim that Mr. Padilla was precluded from participation in the provision of medical services or any other service within the Detention Center. The undisputed facts reveal that Mr. Padilla was not discriminated against, or that he was unable to participate in or receive the benefit of a service, program, or any activity available to other inmates by reason of that disability. Mr. Padilla was afforded medical and mental health care, was able to request and receive a response for medical care and had the ability to refuse medical care or medications. *Simmons v. Navajo,* 609 F.3d 1011, 1022 (9th Cir. 2010)("the ADA prohibits discrimination because of disability, not inadequate treatment for disability.'). *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice.").

Likewise, there is no evidence to support the claim of an alleged failure to accommodate, whatever those accommodations might be, which is not altogether clear other than the allegation in paragraph 100 that Defendants refused to provide Mr. Padilla with proper psychiatric care and medications." Again, Mr. Padilla was provided with medications. In fact, upon request, his medications were changed and Mr. Padilla informed medical staff that the new medications were "working better." As well, Mr. Padilla had access to medical and mental health care, and the evidence supports that he was seen, evaluated and had further access if he wanted it. There is not otherwise evidence that the County Defendants (or the Wellpath Defendants, for that matter) denied Mr. Padilla any medications or care at all much less that any such denial was because of disability. As noted, above, inadequate medical care claims are insufficient under the ADA and RA.

**IV. State Law Claims**

Plaintiff's State law claims are barred because Mr. Padilla's suicide is an independent intervening cause of his death. the doctrine of independent intervening cause. *Silva v. Lovelace Health System,* 2014-NMCA-086, 331 P.3d 958. Here, Mr. Padilla was receiving medical and mental health care provided by the third-party contractor, Wellpath. As noted in the discussion above, moreover, there was no subjective knowledge of a substantial risk of suicide by any of the Detention Center Defendants. Plaintiff otherwise presents no evidence that Mr. Padilla's suicide was foreseeable by these Detention Center Defendants. *Cf. Johnstone v. City of Albuquerque,* 2006-NMCA-119,¶¶ 10-11, 140 N.M. 596, 145 P.3d 76 (providing two exceptions to rule that suicide is independent intervening cause, including special relationship exception).

Here, no exception applies to the rule that suicide is an independent intervening cause. The only arguable exception would be the special relationship between Mr. Padilla and Roosevelt County by virtue of his incarceration. *City of Belen v. Harrell,* 1979-NMSC-081, 93 N.M. 601, 603 P.2d 711 (when one party is in custodial care, the custodian has a duty to exercise reasonable and ordinary care

for the protection of the life and health of the person in custody). However, again, the undisputed facts are that none of the Detention Center Defendants had any knowledge of a risk of suicide such and no other evidence that Mr. Padilla's suicide was foreseeable, notwithstanding the special relationship. *Johnstone,* 2006-NMCA-119, ¶ 11(special relationship exception results from a special relationship, that presumes or includes knowledge of the decedent's risk of suicide).

Plaintiff's State law claims under the New Mexico Tort Claims Act Sections 41-4-6 and 41-4-9 are barred by sovereign immunity. The claims presented here are medical in nature and the County contracts for medical care with Wellpath. Under these circumstances, the Detention Center is entitled to sovereign immunity. *Lessen v. City of Albuquerque,* 2008-NMCA-085, 144 N.M. 314, 187 P.3d 179 (City not liable when it contracted for medical care under Sections 41-4-6 and Section 41-4-9).

As well, Plaintiff cannot establish any claim in negligence against these Defendants because Plaintiff has no witness to testify concerning the relevant standard of care in detention center practices. *Villalobos v. Bd. of Cnty. Comm'rs of Dona Ana Cnty.,* 2014-NMCA-044, ¶¶ 5-6, 322 P.3d 439 (Plaintiff must submit expert testimony "to establish the standard of care for the administration of services in a prison facility, given the professional judgment involved in policy-making, hiring, and operational decisions on issues of inmate safety and health.").

Alternatively, as discussed below, the Defendants are entitled to summary judgment as to each of the waiver provisions invoked by Plaintiff.

**a. 41-4-6**

Section 41-4-6 of the New Mexico Tort Claims Act waives immunity "for damages resulting from bodily injury . . . caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." N.M. Stat. Ann. § 41-4-6(A). It appears that Plaintiff bases her claim on the allegations that the County failed to provide medical care and treatment to detainees. However, Plaintiff's

evidence does not support such a claim as to Mr. Padilla or to the general prison population. *Archibeque v. Moya,* 1993-NMSC-079, 116 N.M. 616, 866 P.2nd 344 (reading Section 41-4-6 to waive immunity every time a public employee's negligence created a risk of harm for a single individual would subvert the purpose of the Tort Claims Act).

Plaintiff, here, has no evidence of an alleged denial of medical care by the County Defendants at all. In fact the contrary is true. Again, Mr. Padilla was seen, treated, evaluated, provided medications; he was able to request care and received care in response to his requests. Any alleged claim, however, was unique to Mr. Padilla; there is no evidence of a denial of medical treatment to the general prison population. Therefore, the Defendants are entitled to summary judgment. *Gallegos v. Bernalillo County Bd. of Comm'rs,* 2017 U.S. Dist. LEXIS 131396, * 80, No. CIV 16-0127 JB/WPL (D.N.M., August 17, 2017 (J. Browning)(reading 41-4-6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purpose of the Tort Claims Act); *See generally Upton v. Clovis Mun. Sch. Dist.,* 2006-NMSC-040, 140 N.M. 205, 141 P.3d 1259 (requiring that dangerous condition on the premises be dangerous to class of people that use the building in question)

**b. 41-4-9**

Again, New Mexico courts have generally denied the application of Section 41-4-9 and found immunity for governmental entities and employees when medical contractors operate the medical unit in question. *See Lee v. McKinley Cty. Adult Det. Ctr.,* No. CIV 12-1124 MCA/LAM, 2014 U.S. Dist. LEXIS 200724, 2014 WL 12788056 at * 10 (D.N.M. September 9, 2014(J. Armijo)(citing *Lessen*, supra) *Celya v. Hall,* 2004-NMSC-005, 135 N.M. 115, 85 P.3d 239(recognizing that a governmental entity could not be held liable under the TCA for the alleged acts of an independent contractor)); *Kellum v. Bernalillo County,* No. CIV 14-00163 RB/CG 2017 U.S.Dist. LEXIS 194641, 2015 WL 12859577 *10 (D.N.M. June 9, 2015)(41-4-9 is inapplicable to County because independent contractor operates the

medical unit at detention center). The same result should obtain here. Roosevelt County contracted with Wellpath, LLC. Therefore, the Defendants are entitled to sovereign immunity.

Moreover, again, there is no evidence of medical negligence against these Detention Center Defendants, as they did not provide medical care or services. Therefore, the Defendants are entitled to summary judgment.

**c. 41-4-10**

For the same reasons, the Defendants are entitled to summary judgment as to any claim under Section 41-4-10. Additionally, the terms of Section 41-4-10 are inapplicable here to the Detention Center Defendants. *Amirault v. City of Roswell,* 1997 U.S. App. LEXIS 19902, No. 96-2181 (10th Cir., July 31, 1997)(agreeing with New Mexico District Court that Section 41-4-10 does not apply to police officers); *M.D.R. v. State Human Services Dept.,* 1992-NMCA-082, 114 N.M. 187, 836 P.2d 106 (health care provider means a person, corporation, organization, facility or institution licensed or certified by the state to provide health care or professional health care services).

Section 41-4-10 of the TCA provides: "The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees *licensed by the state or permitted by law* to provide health care services while acting within the scope of their duties of providing health care services." There is no evidence here that the Defendants were licensed by the State to prove medical health care services in the scope of their duties. For this additional reason, the Defendants are entitled to summary judgment.

**d. 41-4-12**

The NMTCA waives immunity from liability for the following conduct undertaken by a law enforcement officer:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property

> damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and the laws of the United States or New Mexico when caused by law enforcement Officers while acting within the scope of their duties.

NMSA 1978, § 41-4-12. Plaintiff committed suicide. It is not alleged, nor is there evidence, that these Defendants committed any of the intentional torts alleged in this provision. With regard to law enforcement officers, it is clear that immunity is not waived under the TCA for self-inflicted injury. *Amirault v. City of Roswell, supra.*

**V. Loss of Consortium**

Loss of consortium is not a liability claim, but a claim for damages, which are derivative of the underlying liability claims. In other words, loss of consortium damages are consequential or special damages, and so "are contingent upon the injured person's entitlement to general damages." *Archer v. Roadrunner Trucking, Inc.*, 1997-NMSC-003, ¶ 11, 122 N.M. 703, 930 P.2d 1155. However, "[w]here the defendant is not liable to the injured person for physical injuries there can be no derivative claim for consequential damages by the injured person's" dependents. *Archer v. Roadrunner Trucking, Inc.*, 1997-NMSC-003, at ¶ 12, 122 N.M. 703, 930 P.2d 1155.

Here, as set forth above, the undisputed facts and the law show that there is no underlying liability against these Defendants. Accordingly, the Defendants are not liable to the Estate and therefore the minor child, here, has no derivative claim against the Defendants.

**CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Motion be granted and that Plaintiff's Complaint be dismissed with prejudice.

Respectfully submitted:

MACKE LAW & POLICY, LLC

*/s/ Daniel J. Macke 5/27/2022*
Daniel J. Macke
8206 Louisiana Blvd. NE, Ste. A
Albuquerque, NM 87113
(505) 308-8668
dan@mackelaw.com

I HEREBY CERTIFY that on this 27th day of May 2022, I filed the foregoing electronically through the Odyssey file and serve system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Eric D. Dixon
Attorney and Counselor at Law, P.A.
301 South Avenue A
Portales, New Mexico 88130
eric@ericdixonlaw.net

Alfred A. Park
Park & Associates, LLC
3840 Masthead Street, N.E.
Albuquerque, NM 87109
apark@parklawnm.com

Taylor M. Lueras
Park & Associates, LLC
3840 Masthead Street, N.E.
Albuquerque, NM 87109
tlueras@parklawnm.com

*/s/ Daniel J. Macke*
Daniel J. Macke